IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 AUG 30  PM 3: 11

DEPUTY CLERK

| | | |
|---|---|---|
| DILLON WADE THOMPSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:14-CV-0139 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner DILLON WADE THOMPSON.  For the reasons set forth below, it is the

opinion of the undersigned United States Magistrate Judge that petitioner's federal application for

habeas corpus relief should be DENIED.

I.
FACTUAL[1] AND PROCEDURAL HISTORY

The victim of all criminal acts alleged was appellant's daughter M.T., who was
twelve at trial.  The events leading to his prosecution occurred during appellant's
visitation with M.T. and her younger sister, which took place mainly at appellant's
apartment.  M.T. testified her father took pictures of her without her clothes, often
taking her clothes off for her.  She testified he touched her breasts, making her
uncomfortable.  She also testified they played games during which she took her
clothes off or put them on, depending on the outcome of the game.

In addition to still pictures, the evidence included video clips appellant took of M.T.
in the shower and swimming naked in the apartment pool.  An employee of the North

---

[1] The factual history is taken directly from the opinion on direct appeal.

HAB54\R&R\THOMPSON-139.DNY:1

Texas Regional Forensic Computer Lab testified he reviewed the contents of appellant's computers, hard drives, Scan Disk cards and camcorders and found nude and semi-nude images of M.T., as well as other children. An investigator for the 47th District Attorney's Office testified he viewed several video clips and photographs that confirmed M.T.'s trial testimony. He viewed approximately 500 photographs depicting nude children, including M.T., in various poses and scenes. In all, some 500 photographs and video clips were placed into evidence.

Appellant testified on his own behalf. He acknowledged taking photographs of M.T. without her clothes, but denied any harm to his daughters. With regard to the contact with the child's breasts, he admitted to one "very slight pinch, very brief and over with…." He told the court he was not excited by the pictures of his daughter or the pictures of other children. Appellant did not believe anything in the photos or videos was lewd conduct by his daughter and, while he agreed he downloaded pictures of nude children, he did not believe any of the photographs were child pornography.

The trial court found appellant guilty on all counts alleged by the indictments, and assessed punishment as noted.

*Thompson v. State*, 2012 WL 426680 (Tex.App.– Amarillo 2012, pet. ref'd).

After being charged by indictment petitioner pled not guilty to multiple offenses of Indecency with a Child, Sexual Performance by a Child, and Possession of Child Pornography in four (4) cases, Cause Nos. 20,949-B, 20,961-B, 20,962-B, and 21,397-B. [Dkt. 12-25 at 17]. The offenses grew out of the same criminal episode and were consolidated for trial on motion by the State. [*Id.* at 17- 18, 46]. On January 26, 2011 after a bench trial in the 181st Judicial District Court of Randall County, Texas, petitioner was found guilty of Indecency with a Child and Sexual Performance by a Child and sentenced to two, concurrent twenty year terms of imprisonment. *See State v. Thompson*, No. 20,949-B [Dkt. 13-8 at 24]. Petitioner was also convicted in Cause No. 20,961-B of six counts of Sexual Performance by a Child and given concurrent twenty year sentences on each count, with those sentences set to run after the convictions in Cause No. 20,949-B had discharged *i.e.* the six sexual performance convictions were to be "stacked" on the convictions

in Cause No. 20,949-B.  *See State v. Thompson*, No. 20, 961-B. [Dkt. 13-8 at 25-26].  Petitioner

was further convicted, in Cause No. 20,962-B, of six counts of Possession of Child Pornography

and given concurrent ten year sentences, those sentences set to run after the convictions in Cause

No. 20,961-B had discharged *i.e.* the six possession convictions were to be "stacked" on the

convictions in Cause No. 20,961-B. *See State v. Thompson*, No. 20,962-B. [Dkt. 13-8 at 26-28].

Finally, petitioner was convicted, in Cause No. 21,397-B with eleven counts of Possession of Child

Pornography and given concurrent five year sentences, those sentences set to run after the

convictions in Cause No. 20,962-B had discharged *i.e.* the eleven possession convictions were to be

"stacked" on the convictions in Cause No. 20,962-B. *See State v. Thompson*, No. 21, 397-B. [Dkt.

13-8 at 28-30].

On February 10, 2012, the state intermediate appellate court affirmed petitioner's

convictions on direct appeal. *Thompson v. State*,  07-11-0060-CR, 07-11-0061-CR, 07-11-0062-

CR, 07-11-0063-CR, 2012 WL 426680 at *2 (Tex. App.—Amarillo Feb. 10, 2012, pet. ref'd).  [Dkt.

12-4].  On November 21, 2012, the Texas Court of Criminal Appeals refused petitioner's petition

for discretionary review of the intermediate appellate court's determination. *Thompson v. State*,

PD-0602-12, PD-0603-12, PD-0604-12, and PD-0605-12.

Petitioner sought collateral review of his Randall County convictions by filing state habeas

corpus petitions and on May 14, 2014, the Texas Court of Criminal Appeals denied petitioner's state

habeas applications each without written order. *In re Thompson*, Nos. 81,268-01, 81,268-02,

81,268-03, and 81,268-04. [Dkt. 13 at 11, 20, 22, and 30].  Petitioner filed motions for rehearing

which were dismissed June 2, 2014.  [Dkt. 13-15].

On June 3, 2014, petitioner deposited the instant federal habeas petition in the prison mail

system, such application being received by this Court and file stamped on June 9, 2014. [Dkt. 3-1]. On December 3, 2014, the United States District Judge denied a motion filed by respondent to dismiss petitioner's habeas application as time-barred.  On December 31, 2014, respondent filed an answer and on March 10, 2015 petitioner filed a reply.

II.
PETITIONER'S ALLEGATIONS

Petitioner contends his conviction was in violation of the Constitution and laws of the United States for the following reasons:

1.      The evidence was insufficient;

2.      Petitioner is actually innocent of the charges;

3.      Petitioner was denied effective assistance of counsel at trial because counsel failed to:

   a.      adequately prepare for trial:

   b.      interview and call any defense witnesses or offer mitigating evidence;

   c.      research case law on pornography and understand the opinions of the Texas Court of Criminal Appeals and the United States Supreme Court;

   d.      interview the State's witnesses and elicit favorable testimony from the State's witnesses, including the victim; and

   e.      to move for a new trial.

4.      Petitioner was denied effective assistance of counsel on appeal because appellate counsel failed to:

   a.      challenge the sufficiency of the evidence; and

b.     understand opinions of the Texas Court of Criminal Appeals and the United States Supreme Court.

5.     The prosecution withheld exculpatory evidence *i.e.* that petitioner had never downloaded any child pornography;

6.     The trial court committed error when it viewed digital images outside of the presence of petitioner;

7.     The state appellate court violated petitioner's due process rights when it affirmed his convictions in one day;

8.     Petitioner's sentence and punishment constitutes cruel and unusual punishment; and

9.     The trial court was given inadequate time to review petitioner's state habeas applications and neither it nor the Texas Court of Criminal Appeals had adequate time to review petitioner's response to the State's answer.

III.

STANDARD OF REVIEW[2]

The state habeas court considered the claims petitioner raises here and denied relief.  In order to grant federal habeas corpus relief, a petitioner must demonstrate and this Court must find the state court determination of the facts was unreasonable in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).  Where applicable, the state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'"  *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006), *quoting* 28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).  In determining whether the state court decision was unreasonable, this

---

[2]In her answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standard of review, as well as the application of presumptions and burdens of proof, in federal habeas corpus proceedings. *Respondent's Answer* at 6-10.  This summary is set forth in lieu of replicating respondent's 5-pages of fully briefed law regarding the standard of review this Court must follow.

Court must be careful not to substitute its judgment for that of the state court. In other words, a determination that the state court reached the wrong result or that the state court decision was incorrect, is insufficient. Denial of relief based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Alternatively, in order to grant relief, a petitioner must demonstrate and this Court must find the state court decision resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). The state court's application of the law must be "objectively unreasonable" not "merely erroneous" or "incorrect." *Cobb v. Thaler*, 682 F.3d 364 (5th Cir. 2012). The AEDPA standard is met only in cases where there is no possibility a fair minded jurist could disagree that the state court's decision conflicts with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

IV.
MERITS

*Claim 1 - Sufficiency of the Evidence*

By his first claim petitioner asserts the evidence was insufficient to sustain his convictions. In *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The Court stated the test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at

319. In applying this standard, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id.* The Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

All credibility choices and conflicts in inferences are to be resolved in favor of the verdict. *United States v. Graves*, 669 F.2d 964, 969 (5th Cir. 1982). Sufficiency of the evidence must be gauged in light of applicable state law, *Jackson*, 443 U.S. at 324; *McGee v. Estelle*, 732 F.2d 447, 451 (5th Cir. 1984), and federal courts should defer to state evidentiary rules. *Moore v. Duckworth*, 443 U.S. 713, 714-15, 99 S. Ct. 3088, 61 L. Ed. 2d 865 (1979).

Petitioner argues that none of his attempts at appeal in the Seventh Court of Appeals or in the Texas Court of Criminal Appeals have ever been adjudicated on the merits, including his insufficiency of the evidence claims. Petitioner is incorrect. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to a presumption of correctness. *Ex parte Torres*, 943 S.W.2d at 472; *Singleton*, 178 F.3d at 384 (the Fifth Circuit recognizes this Texas state writ jurisprudence).

In addition, and as argued by respondent, a federal habeas court is required to give great deference to a state court determination of sufficiency of the evidence. The Seventh Court of Appeals found that petitioner's "primary contention" at trial and on appeal was that the evidence was insufficient to prove guilt because the photographs he took of his daughter did not portray lewd exhibitions of her genitals, anus or breasts. The appellate court stated, however, that it reviewed each ground presented by petitioner, made an independent review of the entire record, and determined petitioner's contention was frivolous. *Thompson v. State*, 2012 WL 426680 at *2 (Tex.

App.—Amarillo Feb. 10, 2012, pet. ref'd).  Petitioner's claims should be denied.

Petitioner also appears to argue that evidence at trial proved that the National Center for Missing and Exploited Children (NCMEC) had determined not one file on his devices was pornographic. [Dkt. 8 at 5, Petitioner's Memorandum of Law].  Petitioner's argument is not valid. Sergeant Timothy Fox of the Dallas Police Department was called to testify about his analysis of petitioner's recording devices including four desktop computers, one laptop computer, one external hard drive, five SanDisk [camera] cards, one camera, one DVD camcorder, two Vivitar camcorders and one Vivicam camcorder.  [Dkt. 13-5 at 152, 155; Reporter's Record (RR)5 at 152, 155].  During his testimony Sergeant Fox explained he located child pornography on these pieces of equipment. [Dkt. 13-6 at 1; RR5 at 157].  The officer also testified that the images on the equipment were compared to data, referred to as a "known file filter" or KFF,  received from the NCEMC in an attempt to identify the unknown children in the images on the equipment.   [Dkt. 13-6 at 78; RR5 at 163-164].  The officer testified, "I didn't have any," referred to the fact that none of the child pornography images on petitioner's equipment matched the KFF images received from the NCMEC.  [*Id.*].  The witness did not testify that none of petitioner's property had any child pornography.  Petitioner's claim is without merit.

Petitioner also argues his daughter, the victim in this case, testified she was not sexually molested and the fact finder reached the wrong decision.  [*Id.* at 7].  A sexual assault nurse examiner (SANE) from Northwest Texas Hospital was called to testify and a separate voir dire of this witness was conducted by defense counsel who objected to the relevance of her testimony. [Dkt. 13-6 at 46-51; RR5 at 202-207].  The trial court ultimately allowed the testimony for the limited purpose of the indecency with a child offense.  [*Id.* at 51; RR5 at 207].  The prosecution conceded there was no

sexual trauma and the testimony was offered only toward the allegation of breast touching. Petitioner's contention there were no acts committed which fit his definition of sexual molestation is irrelevant and does not support his sufficiency of the evidence claim. Petitioner's daughter, the victim, testified her father took pictures of her partially clothed or without her clothes, pictures and/or video of her in the shower or tub, touched her breasts a lot and pinched them, touched her butt, made her pose for pictures, threatened to withhold food until she posed and allowed the pictures, and bought her nice things as a reward for the pictures. [Dkt. 13-5 at 26, 29-35, 38, 46-49, 67, 77, 85; RR5 at 26, 29-35, 38, 46-49, 67, 77, 85]. The state appellate court reviewed each of petitioner's claims and made an independent review of the entire record, and thereafter determined petitioner's sufficiency of the evidence claims were frivolous. *Thompson v. State*, 2012 WL 426680 at *2 (Tex. App.—Amarillo Feb. 10, 2012, pet. ref'd). Petitioner has presented nothing to this Court which would meet his burden and this Court has reviewed the evidence, giving the required deference to the state court determination of sufficiency of the evidence. Petitioner's sufficiency of the evidence claim is without merit and should be denied.

### *Claim 2 - Actual Innocence*

The Court understands petitioner to claim he is actually innocent of this crime. Petitioner argues the State never proved that his touching his daughter, the victim, on the breast was anything other than horseplay, that he never downloaded pornographic images, and never took photographs of his daughter posing in what could be considered lewd or lascivious pictures.

A freestanding actual innocence claim is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). A federal habeas corpus court can consider an actual innocence claim only when the petitioner is attempting to

have the Court conduct a merits review of an otherwise procedurally barred claim.  *See Schlup v.*

*Delo*, 513 U.S. 298,314, 115 S.Ct. 851,860, 130 L.Ed.2d 808 (1995).

Actual innocence means "factual innocence and not mere legal insufficiency." *Bousley v.*

*United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  In order to establish

actual innocence, petitioner must show, "'in light of all the evidence,' 'it is more likely than not that

no reasonable juror would have convicted him'" *Id.* (quoting *Schlup*, 513 U.S. at 328)).

A credible claim that constitutional error has resulted in the conviction of an innocent person

is rare and "requires petitioner to support his allegations of constitutional error with *new reliable*

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added).  Not

only must a petitioner have a truly persuasive basis for relief, but the Supreme Court has also

established "federal habeas relief would only be available if there is no state procedure for making

such a claim." *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003).

Petitioner attempts to avoid the non-cognizability rule by alleging a constitutional error

occurred due to new, reliable evidence having been discovered.  Petitioner references two affidavits

from uncalled witnesses, a 9-page list of questions created for witnesses interrogation, and new

evidence he contends shows he never downloaded pornography *i.e.* the testimony about there being

no KFF images.

The affidavits referenced by petitioner appear to be those of his mother, Janice Thompson,

and his sister Leslie Worsley.  [Dkt. 13-12 at 25-27].  The list of questions referenced appear to be

questions that petitioner thinks defense counsel should have asked the victim, petitioner's daughter;

the victim's sister, petitioner's other daughter; the victim's mother, petitioner's ex-wife; petitioner's

sister; any computer expert witnesses; and petitioner himself . [Dkt. 13-17 at 45-53]. These

documents are found in the records in petitioner's first habeas application, WR-81,268-01, making

them evidence previously considered and denied by the state habeas court.  Petitioner also argues

there was exculpatory evidence withheld by the prosecution making it "newly available" for the

purposes of this federal case.  [Dkt. 8 at 9, Petitioner's Memorandum of Law].  Petitioner appears to

argue the report of Sergeant Fox previously discussed was exculpatory.  The Court is unaware of

any such report however, to the extent Sergeant Fox created a report that none of the images found

on petitioner's equipment matched the KFF images received from the NCMEC, this report would

not be exculpatory for the reasons stated in the discussion about Sergeant Fox's testimony.  To the

extent petitioner claims there was another exculpatory report not disclosed, this allegation is without

merit.  An affidavit was presented to the state habeas court by the assistant criminal district attorney

(DA) on this very issue.  The Assistant DA stated,

> I have reviewed the files this office retains on all of Applicant's cases. No document,
> pleading, letter, memorandum, report or paper has ever been removed from these
> files. Nothing has ever been destroyed. This office has always maintained an "open-
> file" policy with the defense bar and Applicant's trial counsel, Rus Bailey, was given
> unfettered access to all contents of these files. To my knowledge, any and all
> exculpatory evidence, if any, was provided to Mr. Bailey. Therefore, the dictates and
> prosecutorial responsibilities arising from *Brady v. Maryland* were satisfied.

> I can state with confidence that there exists no evidence in these files, nor am I aware
> of any other evidence from any source whatsoever, which indicates, suggests or
> proves that Applicant did not personally download these 500 child pornography
> images onto his personal computer. Indeed, the forensic report which described the
> various examinations carried out on Applicant's computer concludes that the images
> were, in fact, downloaded from commercial child pornography websites and that, in
> all reasonable likelihood, Applicant was personally responsible for having done so.

[Dkt. 13-10 at 70-71].

The actual innocence claim presented by petitioner is not cognizable on federal habeas

review. Petitioner has not shown the evidence he proffers is new and more importantly, has not

shown he would have been acquitted because of the evidence he outlines. He has not shown an

independent constitutional violation, and accordingly, his claim of actual innocence does not present

a ground for federal habeas relief. *See Herrera*, 506 U.S. at 400.

### *Claims 3 and 4 - Effectiveness of Counsel*[3]

Petitioner raises numerous claims of ineffective assistance of trial and appellate counsel.

Ineffective assistance of counsel claims are governed by the standard enunciated in *Strickland v.*

*Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-

pronged *Strickland* standard, a petitioner must show counsel's performance was both deficient and

prejudicial. *Id.* at 687, 104 S.Ct. at 2064. If the attorney made errors so serious the attorney was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States

Constitution, the performance was deficient. *Id.* A reviewing court's scrutiny of trial counsel's

performance is highly deferential, with a strong presumption counsel's performance falls within the

wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Strategic choices

made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at

690-91, 104 S. Ct. at 2066. This is a heavy burden that requires a "substantial," and not just a

"conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770,

787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403,

179 L.Ed.2d 557 (2011).

Even if deficient performance is shown, a petitioner must also show counsel's deficient

---

[3]In her answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standard of review, as well as the application of presumptions and burdens of proof, for claims of ineffective assistance of counsel at trial and on appeal. *Respondent's Answer* Dkt. 20 at 15-18, 25-26. This summary is set forth in lieu of replicating respondent's numerous pages of fully briefed law regarding the standard of review this Court must follow in determining petitioner's claims.

performance prejudiced the defense.  To prove prejudice a petitioner must show "there is a reasonable probability that, but for counsel's errors, the ultimate result of the proceeding would have been different" and that "counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).  A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir. 1993).  If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

The *Strickland* standard also applies to claims of appellate counsel error. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  It is difficult to show defense counsel's decision not to pursue a particular claim on appeal falls outside the "wide range of professionally competent assistance" in order to demonstrate deficient performance. *See Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).  Prejudice in the context of appellate counsel error requires the petitioner to demonstrate a reasonable probability that he would have prevailed on appeal. *Robbins*, 528 U.S. at 285-86.

<u>Trial Counsel</u>

Petitioner has alleged his trial counsel was ineffective because he failed to:

    a.       adequately prepare for trial:

    b.       interview and call any defense witnesses or offer mitigating evidence;

    c.       research case law on pornography and understand opinions of the Texas Court of Criminal Appeals and the United States Supreme

Court;

d.  interview the State's witnesses and elicit favorable testimony from the State's witnesses including the victim; and

e.  move for a new trial.

In his state habeas applications, petitioner alleged he was denied effective assistance of trial counsel based upon the same grounds he presents federally. The Court of Criminal Appeals denied petitioner's state habeas applications without written order on May 14, 2014 and without any remand to the state trial court. *In re Thompson*, Nos. 81,268-01, 81,268-02, 81,268-03, and 81,268-04. [Dkt. 13 at 11, 20, 22, and 30]. This denial amounts to a determination, on the merits, by the state habeas court that petitioner was not denied his constitutional right to effective assistance of counsel as a result of trial counsel's alleged deficiencies and such a finding is entitled to a presumption of correctness. Petitioner has failed to show, in this federal petition, that the state court's finding was based on an unreasonable application of federal law or was based on an unreasonable determination of the facts. Instead, petitioner has merely reargued his state habeas claims that he was constitutionally denied effective assistance of trial counsel. He is not entitled to relief due to the AEDPA relitigation bar. Further, these claims are without merit.

By his first and second claim petitioner appears to argue defense counsel failed to prepare for trial, failed to call petitioner's mother and sister as witnesses, and failed to present mitigating evidence. Petitioner contends these two witnesses could have offered the trial court "many positive things about the Petitioner." [Dkt. 8 at 12, Petitioner's Memorandum of Law]. In his state habeas proceedings both petitioner's mother and sister provided affidavits. [Dkts. 13-12 at 25-28, 13-17 at 41-44]. In her first affidavit, petitioner's mother, Janice Thompson, stated she spoke to defense counsel prior to trial but counsel never requested she testify at trial. Ms. Thompson stated her son

was kind and caring, took excellent care of his daughters, was never late on his child support payments, helped his daughters and ex-wife financially, and loved his daughters very much. She also stated, however, that she believed her son had mental issues saying, "As for this case, there must have been something very wrong with him." [Dkt. 13-17 at 41]. In her second affidavit, petitioner's mother stated that any statement by trial counsel that she was uncomfortable, unhappy or reluctant to testify was untrue. [Dkt. 13-12 at 25]. Petitioner's sister, Leslie Worsley, stated in her first affidavit that she never met with defense counsel prior to trial but if she had been called as a witness she could have testified about the good relationship between petitioner and his daughters, and how he provided for his daughters and his ex-wife, including monetary support and taking them in when they had nowhere else to live so they were safe. [Dkt. 13-17 at 43]. She further stated, however, that "something was terribly wrong with my brother...he was struggling mentally." [*Id.*]. In her second affidavit petitioner's sister stated she met trial counsel for the first time at trial, and never expressed that she was uncomfortable, unhappy or reluctant to testify. [Dkt. 13-12 at 27]. In the state habeas proceeding trial counsel submitted an affidavit which stated,

> As to the suggestion that I was ineffective for my alleged failure to prepare for trial, I conducted a series of exhaustive interviews with the client as well as reviewing, in detail, the investigative reports generated by law enforcement officers involved in his case and the videotaped interviews with Applicant's daughter. After complete review of the State's file, I then shared the content of that review with Applicant through a series of weekly meetings. Applicant had ample opportunities to discuss the evidence during these meetings. I tailored my defense to the multiple indictments based on the responses provided by Applicant when I disclosed his daughter's allegations concerning his behaviors around her. These multiple interviews with Applicant provided me more than enough information to devise how I would approach Applicant's trial. I certainly had the time to prepare. Applicant is simply incorrect in his assertion that I was not prepared.
>
> While it is true that the only witness called on behalf of the defense was Applicant himself, I did initially consider calling his mother and sister. However, based upon my interviews with both of them, it was my studied decision not to call them as

witnesses. They both expressed discomfort with the serious allegations brought against Applicant and as a result of their unhappiness and reluctance to testify, I believed it was not in the Applicant's best interests that either one of them be called. Further, I felt that they would not do well under aggressive cross examination as they surely would be exposed to and that under this kind of questioning, I feared that they might testify to extraneous behaviors and other acts which would have hurt Applicant on the issue of guilt. I also feared that their testimony might very well militate in favor of punitive punishment. For these reasons, I elected not to call either his mother or sister during the trial.

[Dkt. 13-10 at 54-55]. Counsel's affidavit establishes he prepared for trial. It shows he spoke with both petitioner's mother and sister, a statement denied by petitioner's sister, and made a strategic decision not to use them as witnesses. Trial counsel's affidavit does not indicate when he spoke with either of these witnesses but assuming a discrepancy exists as to when counsel spoke with petitioner's sister (prior to trial or the morning of trial), the point is unnecessary to the determination of this issue. Trial counsel determined these witnesses would have been subjected to cross examination which could have resulted in testimony of extraneous behaviors and other acts which were potentially detrimental to petitioner. Counsel also stated he feared their testimony might very well militate in favor of punitive punishment.

On federal habeas corpus review, this Court may not second guess defense counsel's decision to refrain from putting these witnesses on the stand either at trial or sentencing when that decision was clearly a matter of strategy. Complaints of uncalled witnesses are not favored because they are considered trial strategy and strategic choices, made after a thorough investigation of both the law and facts, are "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. Petitioner has not met this burden.

Petitioner also contends trial counsel was ineffective for not presenting mitigating evidence. Trial counsel addressed this issue in his state habeas affidavit stating,

> After a full and complete investigation of the circumstances of the multiple indictments brought against Applicant, my multiple interviews with Applicant (which necessarily addressed the facts underlying the indictments as well as the background and life's circumstances of Applicant) and consideration of the law as it applied to the fruits of my investigation, I came to the conclusion that there was no viable mitigating evidence to present during the unified trial conducted before the trial judge. It was obvious that the only mitigating evidence would have to come from Applicant himself when he took the stand but he was always adamant that he was innocent, had done nothing wrong and should not be convicted or punished for otherwise non-criminal behavior. That was his opinion before trial, during trial and after trial and never wavered. It is obvious he is still of that opinion. I explained to him before trial that given his attitude and the fact that mitigating evidence usually requires some degree of acceptance of responsibility, it appeared that we had nothing to present the court aside from his testimony. Applicant knew of all of this before taking the stand. Finally, I note that Applicant fails to identify any mitigating evidence in existence which he claims I did not present.

[Dkt. 13-10 at 56]. This claim falls within the province of trial strategy and petitioner has failed to meet his burden to entitle him to relief. Moreover, petitioner has failed to show the state court's finding and denial of relief was based on an unreasonable application of federal law or was based on an unreasonable determination of the facts. Petitioner's claims are without merit.

Petitioner next claims trial counsel was ineffective for failing to ask certain questions of certain witnesses including his two daughters, his ex-wife, his sister, any computer experts called to testify and himself. More specifically, petitioner refers to a nine-page document in the state habeas proceedings which appear to be lists of questions he created for defense counsel at a pre-trial meeting to ask these witnesses. [Dkt. 13-13 at 11, 45-53].[4] Petitioner has listed the answers to those questions as, "the answers the witnesses would have given if they were being truthful" [Dkt. 8

---

[4]Petitioner submitted the identical Memorandum of Law with Appendix including this list of questions in each of his four state habeas proceedings.

at 13], and contends these answers would have been helpful to his case.  By his own statement, even petitioner acknowledges that the assumed answers are speculative at best.  The determination whether to ask the questions drafted by petitioner was again a matter of trial strategy for trial counsel.  In his affidavit in the state habeas proceedings trial counsel stated, for example, that petitioner's daughters, "really had nothing good or positive to say at all about [petitioner]." [Dkt. 13-10 at 55].  Petitioner has not met his burden in this claim.

Petitioner next argues trial counsel was ineffective because he failed to research case law and understand the legal opinions of the Texas Court of Criminal Appeals and the United States Supreme Court on the issue of what constitutes pornography.  Petitioner argues, "24 of the 25 Counts against the Petitioner involved digital media files, and whether they were pornographic or not, or whether there was a lewd exhibition of the breast or genitals or not." [Dkt. 8 at 16, Petitioner's Memorandum of Law].  In his affidavit submitted in the state court habeas proceeding trial counsel stated,

> Applicant claims that I did not argue that prevailing case law from the U.S. Supreme Court, various federal appeals courts and the Texas Court of Criminal Appeals establish conclusively that the images found on Appellant's computer did not and does not constitute "pornography" as a matter of law. Applicant's legal conclusions are incorrect as is his implication that I did not advocate his innocence. I argued that the images made the basis of the multiple counts of possession of child pornography were not "lewd" as determined by relevant case law. The record bears me out on this point. I cannot be blamed if the U.S. Supreme Court, various federal appeals courts, the Texas Court of Criminal Appeals and the Amarillo Court of Appeals interpret applicable case law differently than does Applicant or arrive at opinions with which Applicant disagrees.

[Dkt. 13-10 at 56-57].  Contrary to petitioner's allegation, the record shows trial counsel objected to the use of the term pornography until a predicate had been laid, argued the decision whether to categorize the images as pornography was reserved for the trial court, [Dkt. 13-6 at 3], and argued in

closing that the trial court should consider what constitutes "lewd." Counsel argued to the trial

court that he reviewed over 125 cases covering an eleven-year span and submitted to the trial court

the cases that, "...mentioned specific incidences of things that happened that actually kind of - -

constituted lewd conduct," and argued petitioner's case did not meet the definition of lewd. [Dkt.

13-8 at 13, 15-16]. The record supports the fact trial counsel utilized a strategy and petitioner has

again failed to meet his burden and has failed to show the state court's finding was based on an

unreasonable application of federal law or was based on an unreasonable determination of the facts.

To the extent petitioner argues trial counsel did not understand petitioner's technical defense

his claim fails. Defense counsel stated in his affidavit,

> As best I understand, Applicant claims that I did not understand his "technical"
> defense to the charges of possession of child pornography which consists primarily of
> Applicant's self-serving statement that he had never viewed the images, removed
> from his personal computer, and therefore, he could not have known the "content or
> character" of those images. Applicant implies that since I did not present that defense
> to the trial court, he was *necessarily* convicted by the trial court and further, had the
> defense been pursued and presented, there would have been no conviction. This
> seems to suggest that the trial court would have been compelled to believe
> Applicant's testimony that he had never viewed those images on his computer. I did
> not present this defense because there was no basis in fact for its presentation. The
> images in question were taken directly off of the hard drive to Applicant's computer.
> I could not argue in good faith, based on my pre-trial interviews and investigation,
> that Applicant was ignorant of these images.

[Dkt. 13-10 at 57-58]. For the reasons listed above, petitioner's claim should fail.

Petitioner next argues trial counsel was ineffective because he failed to interview the State's

witnesses and elicit favorable testimony from the State's witnesses including the victim. To the

extent petitioner refers to the failure as it relates to his daughters, trial counsel stated,

> The simple facts were that both of Applicant's daughters, each who testified at trial
> against Applicant, were hostile and nothing that I could have done at trial was going
> to alter those opinions. I do recall that the victim did not outright testify to anything
> evil about Applicant, save the multiple occasions involving sexual performance and

the incident of inappropriate touching. I did my best to emphasize that as best I could but the simple fact was that the State's witnesses really had nothing good or positive to say at all about Applicant. There was nothing I could have done during pre-trial preparation or during the actual bench trial to change the young girls' attitudes.

[Dkt. 13-10 at 55].  To the extent petitioner refers to other witnesses, the Court has addressed petitioner's related claim that counsel's failure to ask specific questions drafted by petitioner which petitioner believes would have elicited favorable responses herein.  These claims are matters of trial counsel's trial strategy and petitioner has failed to show the state court's finding was based on an unreasonable application of federal law or was based on an unreasonable determination of the facts.

In his final claim petitioner argues counsel was ineffective for failing to move for a new trial because the fact-finder received other evidence while deliberating.  In his state habeas application trial counsel responded stating, "I am unaware of what 'other evidence' the trial judge might have considered prior to sentencing Applicant. I do recall that the prosecutor and I argued the case after both sides rested and that the trial court did not formally sentence Applicant until a few days afterward, having taken that time to review the child pornography images removed from Applicant's computer and the multiple nude photographs he took of his daughter. I note that Applicant makes no attempt to identify this 'other evidence,' describe what it consisted of, how it was obtained or when or where it was viewed by the trial court." [Dkt. 13-10 at 60].  Petitioner now argues his claim, presented in the ineffective assistance context and also as an independent claim, references some 1,303 pieces of other evidence offered by the State and considered by the fact-finder prior to the finding of guilt.[5]  Petitioner argues the motion should have been granted because it is obligatory

---

[5]Petitioner references "1303 pieces of other evidence from the State" in this portion of his Memorandum of Law [Dkt. 8 at 25], and "1,326 digital media files" in another place in the memorandum [Dkt. 8 at 33].  In both instances, and both claims, petitioner complains of the trial court's review of approximately 1300 images contained on CD's and introduced as State's exhibits at trial.

under the Texas Rules, specifically Texas Rule of Appellate Procedure 21.3(f). While the Rule provides that a new trial "must" be granted under certain circumstances, including when, after retiring to deliberate, the jury receives other evidence, such is not the situation in petitioner's case. The images viewed by the fact-finder in this case *i.e.* the judge, were images admitted in evidence and properly before the trial court. The Rule referenced by petitioner is not applicable to his case.

Additionally, with respect to petitioner's ineffective assistance of trial counsel claims, the Texas Court of Criminal Appeals denied relief as to these claims, and petitioner has failed to show the state court's adjudication was based upon an unreasonable determination of the facts, or was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. Petitioner has not rebutted the state court's finding that his claims were without merit, nor shown the state court's determination was objectively unreasonable. Petitioner's claim of ineffective assistance of trial counsel should be DENIED.

### *Appellate Counsel*

After he was convicted, petitioner moved for and was appointed counsel for appeal. [Dkt. 13-10 at 84]. On direct appeal, counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), claiming there were no meritorious claims to raise on appeal. Petitioner filed a *pro se* brief. The Amarillo Court of Appeals affirmed petitioner's conviction on February 10, 2012. *Thompson v. State*, 07-11-0060-CR, 07-11-0061-CR, 07-11-0062-CR, 07-11-0063-CR, 2012 WL 426680 at *2 (Tex. App.—Amarillo Feb. 10, 2012, pet. ref'd). [Dkt. 12-4].

By his federal application for habeas relief petitioner contends he was denied effective assistance of counsel on appeal because appellate counsel failed to:

   a.     challenge the sufficiency of the evidence; and

b.   understand opinions of the Texas Court of Criminal Appeals and the United States Supreme Court on insufficient evidence claims.

According to the appellate court, appellate counsel referenced, in the *Anders* brief, five grounds which could possibly support an appeal but counsel then explained that none of the grounds showed reversible error and concluded the appeal was frivolous. [Dkt. 12-4 at 4]. The appellate court, after an independent review of the record, agreed with appellate counsel. [*Id.* at 3-4].

Under Texas jurisprudence, a claim of ineffective assistance of counsel may be raised on direct appeal, assuming the right to such appeal otherwise exists. *See Ex parte White*, 160 S.W.3d 46, 49 n. 1 (Tex.Crim.App. 2004). Both of petitioner's ineffective assistance of appellate counsel claims revolve around his prior claims of sufficiency of the evidence. Petitioner's ineffective assistance of trial counsel claims on the sufficiency issue have been addressed above. Petitioner has not demonstrated he is or would have been entitled to appellate relief on any of the claims. Petitioner has not demonstrated appellate counsel's actions were objectively unreasonable, or that there is a reasonable probability that, but for appellate counsel's actions he would have prevailed on appeal. Appellate counsel was not deficient for failing to raise frivolous claims as grounds of error, nor was petitioner prejudiced by any failure to raise frivolous grounds. Moreover, as articulated by respondent, the appellate court reviewed the sufficiency of the evidence claims, finding them to be without merit and frivolous. [*Id.* at 4-5]. Petitioner's claims are without merit and should be denied.

### *Claim 5 - Exculpatory Evidence*

In his fifth ground, petitioner claims his rights under *Brady* were violated when the state withheld exculpatory evidence, in the form of a report, which he contends shows he never downloaded child pornography. To prevail on a *Brady* claim, a petitioner must show (1) the

prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). The State has no obligation to point the defense toward potentially exculpatory evidence if that evidence is either already in the possession of the defendant or can be discovered by the defendant in the exercise of due diligence. *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997).

Petitioner's insufficiency of evidence claim and the NCMEC claim have been discussed *supra.* In the *Brady* claim, petitioner again identifies the testimony of Sergeant Timothy Fox of the Dallas Police Department, who was called to testify about his analysis of petitioner's recording devices. Sergeant Fox testified about the comparison of the images on petitioner's equipment to KFF data received from the NCEMC. Petitioner contends Sergeant Fox's report was exculpatory. Petitioner argues the State had this witness's report months before trial but failed to disclose it. As addressed herein, the comparison made between the images on petitioner's equipment and the KFF data were attempts to identify the unknown children on petitioner's equipment with known children in the database kept by NCEMC. [Dkt. 13-6 at 78; RR5 at 163-164]. The fact that the officer testified, "I didn't have any," was not testimony that there was an absence of pornographic images on petitioner's equipment but rather referred to the fact that none of the images of children on the equipment matched the KFF images received from the NCMEC *i.e.* none were documented missing or exploited children. The witness simply did not create a report nor did he testify that he found no pornography. Petitioner has failed to show favorable, material exculpatory evidence existed or that it was withheld from him. His fifth ground is without merit.

### *Claim 6 - Trial Court Error*

Petitioner next claims the trial court committed error when it viewed 1,326 digital media

files outside of his presence while deliberating.  This issue, asserted in other claims, has been

addressed, but will be briefly addressed again.  To obtain habeas corpus relief, petitioner must show

there was a federal constitutional violation that harmed him.  *Malchi v. Thaler*, 211 F.3d 953, 957

(5th Cir. 2000).  He is not entitled to relief on the grounds of trial court error, unless the error was of

a constitutional nature.  *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).

Petitioner concedes that three CD-ROM's were admitted into evidence and that those CD's

contained 1,326 digital images.  To the extent petitioner appears to argue the State's exhibits should

have totaled 1,326 not three [Dkt. 8 at 33], the argument is without merit.  The images were

admitted during trial, albeit on three CD's instead of 1,326 CD's, and were properly before the trial

court/factfinder.

Petitioner also appears to claim each and every image should have been reviewed in court

before the judge and in petitioner's presence.  Petitioner appears to contend the out-of-court viewing

of 1,326 images constituted "other evidence" under the Texas Rules, specifically Texas Rule of

Appellate Procedure 21.3(f).  As discussed *supra*, this is a state rule and under this Rule a defendant

"must" be granted a new trial under certain circumstances including when, after retiring to

deliberate, the jury receives other evidence.  Petitioner has not shown the images constituted

anything other than evidence which had been admitted at his trial.  These images, received into

evidence and properly before the trial court, make the rule referenced by petitioner inapplicable.

The trial court judge was free to view all of the documents admitted into evidence.  Petitioner's

claim is without merit.

### *Claim 7 - Appellate Court Error*

Petitioner next contends the state appellate court violated his due process rights by affirming

his convictions in one day.  Petitioner makes other allegations of appellate court error *i.e.* that the appellate court was mistaken when it stated the images found were all of his daughter, the victim, when there were images of other children as well, that the appellate court determination of the victim's age was off by one year, that the appellate court referred to one witness's testimony as having reviewed 500 files when he actually stated there were 626 or 826 other files he also viewed. [Dkt. 8 at 36-39, Petitioner's Memorandum of Law].  Petitioner alleges the state appellate court could not find the trial court judge wrong and as support for this allegation, petitioner references the trial court judge's statement that he knew the appellate court judges "personally."  [*Id.* at 38].

As discussed by respondent, the crux of petitioner's argument is that the state appellate court took only a brief period of time, one day, to review his state trial record and erred in doing so. Respondent argues this is an inadequate representation of the actual timeline.  Attorney Mr. James Abbott was appointed as appellate counsel on January 27, 2011. [Dkt. 12-15 at 111].  Petitioner's appellate counsel filed his *Anders* brief on May 26, 2011. [Dkt. 12-9].  On October 3, 2011 petitioner filed a *pro se* response to the *Anders* brief. [Dkt. 12-8].  On February 10, 2012 the Court of Appeals for the Seventh District of Texas upheld petitioner's conviction. [Dkt. 13-10 at 91].

Petitioner submitted, with his reply to the respondent's answer, a printout from the Seventh Court of Appeals website related to his direct appeal. [*Id.* at 28-30].  A review of that document and its timeline shows an entry dated February 9, 2012 which reads "submitted" with the next entry on February 10, 2012, saying "memorandum opinion issued." [*Id.* at 23].  Petitioner appears to argue that all the filed documents referenced were not *submitted* to the Seventh Court of Appeals until February 9, 2012, the day before the memorandum opinion was issued, and this short period of time to review constituted error. [Dkt. 23 at 24].  Petitioner, however, has not offered anything to

support his interpretation of the docket entries. The appellate court would have had and did have before it the entire state court record as well as the pleadings filed by the parties as of the date those pleadings were filed. It is clear an *Anders* brief was filed May 26, 2011, that petitioner filed a *pro se* response on October 3, 2011, and that the clerk of the court, upon the expiration of the statutory period for the State to file a brief, set the case for "submission on briefs" on January 19, 2012. These are terms used by the clerk on the case events list and do not necessarily translate to mean the judges of the court received the pleadings one day, quickly reviewed them and issued an opinion the next day.[6]

There is no merit to petitioner's challenge as to the amount of time the appellate court took to review the record and briefs before it. Petitioner's claim of one day is speculative and unsupported by the record and should be denied.

### Claim 8 - Cruel and Unusual Punishment

Petitioner next argues his sentences constitute cruel and unusual punishment in violation of the Eighth Amendment. Petitioner argues his fifty-five year sentence exceeds sentences imposed in other, more severe cases where the crimes included murder, capital murder and sexual assault. Specifically, petitioner cites several Amarillo, Texas cases, as well as other jurisdictions, where defendants charged with the crimes of capital murder, murder and sexual assault were given lesser sentences than petitioner. Petitioner's anecdotal comparison is not probative. Further, petitioner was convicted in four cases with twenty-five separate offenses and given multiple concurrent and stacked sentences. The longest individual sentence petitioner received was twenty years, which was within the Texas punishment range for a second degree felony.

---

[6]Even if the appellate court took one day or so to rule, such does not *per se* deny petitioner due process.

"The Eighth Amendment, which applies against the States by virtue of the Fourteenth Amendment, provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" *Harmelin v. Michigan*, 501 U.S. 957, 962, 111 S. Ct. 2680, 2683, 115 L. Ed. 2d 836 (1991).  While the Eighth Amendment has been interpreted to preclude a sentence proven to be greatly disproportionate to the underlying offense, courts on collateral review may not substitute their judgment for that of the legislature or the trial courts who imposed the sentence and may only decide whether the sentence is within the constitutional limitations. *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir. 2010) (internal quotation marks and citation omitted). Review of Eighth Amendment challenges is therefore narrow and only rarely successful. *Id.*  In determining whether a sentence is unconstitutionally disproportionate in violation of the Eighth Amendment, courts initially make a threshold comparison of the gravity of the offense against the severity of the sentence.  Only if the court determines that the sentence is grossly disproportionate to the offense will the court engage in further analysis. *Id.*

Petitioner was found guilty of twenty-five offenses broadly categorized in the Texas Penal Code as sexual and public indecency offenses.  Petitioner was given 20-year sentences on the one count of indecency with a child and seven counts of sexual performance by a child.  Petitioner was given six 10-year sentences for possession of child pornography and eleven 5-years sentences on the remaining possession of child pornography charges.  The sentences imposed were not grossly disproportionate to the crimes committed.  The crimes involved children, who are particularly vulnerable, and were sexual in nature.  Even if the Court were to consider the concurrency and stacking effect of petitioner's sentences it would not change the Court's decision.  The fact that petitioner received, in effect, a total 55-year sentence for the many crimes he committed goes against

any argument that there was an Eighth Amendment violation. Petitioner's argument is without merit and should be denied.

### *Claim 9 - State Habeas Court Error*

Petitioner appears to argue his due process rights were violated because the trial court forwarded the record in an untimely manner and the state habeas court acted in error in reaching its decision without consideration of petitioner's response to the state's answer. Petitioner alleges the response was clearly not considered because if it had been, the state habeas court would have seen the multiple errors petitioner referenced in his response and come to a different conclusion. Petitioner's argument is speculative, conclusory and self-serving at best.

Petitioner has not demonstrated the state habeas court failed to review all of the record. A federal habeas corpus proceeding is a collateral review (as opposed to a direct appeal) whereby a petitioner may challenge, *inter alia*, a final state conviction and/or sentence. In federal court, this collateral review is limited to grounds that such conviction and/or sentence violates the petitioner's constitutional rights under the United States Constitution. A federal habeas corpus proceeding is not a means by which to directly appeal state court rulings – a function of the state appellate courts and, in appropriate circumstances, certiorari review of the United States Supreme Court. This Court has no jurisdiction to directly review and/or overturn a state appellate court ruling. Instead, the jurisdiction of this Court on federal habeas review of a state prosecution is collateral only and is limited to constitutional issues under 28 U.S.C. § 2254(d)(1). *See Fuller v. Johnson*, 114 F.3d 491, 498 (5th Cir. 1997).

To obtain federal habeas corpus relief, a petitioner must show an error committed in connection with his conviction and/or sentence was so gross or extreme, or a trial so fundamentally

unfair, that the petitioner's constitutional rights were violated by his conviction and/or sentence. Petitioner failed to establish grounds on which he contends he is being unlawfully held.  Instead, petitioner appears merely to complain the state trial court erred in following procedural timeline rules which resulted in the state habeas court error of inadequate time to review petitioner's response.  As set out by respondent, petitioner's claim of state law error is not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (federal habeas corpus relief does not lie for errors of state law).  All of petitioner's claims are without merit.

V.
### RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus filed by petitioner DILLON WADE THOMPSON should be DENIED.

VI.
### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___30th___ day of August 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the

event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).